CORNELIO A. MORALES, demandante y recurrente, *v.* LUIS LIZARRIBAR y EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY, demandados y recurridos.

*Número:* R-70-357    *Resuelto:* 18 de mayo de 1972

*Benicio Sánchez Castaño, Felipe Benicio Sánchez Rivera, Benicio Sánchez. Rivera,* abogados de los recurrentes; *Rieckehoff, Calderón, Vargas & Arroyo,* abogados de los recurridos; *Jorge J. Oppenheimer Méndez, Elba Canales de Mattini* y *Edwin A. Hernández Rodríguez,* abogados del *amicus curiae,* Administración de Compensaciones por Accidentes de Automóviles.

EL JUEZ ASOCIADO SEÑOR MARTÍNEZ MUÑOZ emitió la opinión del Tribunal.

En 1968 nuestra Asamblea Legislativa aprobó la Ley de Protección Social por Accidentes de Automóviles. Uno de los

problemas más serios que padece la sociedad puertorriqueña es la alta incidencia de accidentes de vehículos de motor que ocurren en el país anualmente: 59,556 en el 1969–70, según Informe Anual de la Policía de Puerto Rico. La densidad poblacional es una de las más altas del mundo. Por carecer de otros medios, el movimiento interno de personas y productos se realiza casi exclusivamente mediante el uso de automóviles, camiones y autobuses. La congestión del tránsito vehicular es una experiencia que vivimos a diario. En su informe sobre "Transportación", sometido al Hon. Gobernador de Puerto Rico en 2 de junio de 1970 por el Consejo Asesor Para el Desarrollo de Programas Gubernamentales, se pronostica que para el 1986 los viajes por carreteras totalicen 8.1 billones de millas vehiculares, casi el doble de los 4.3 billones para 1967.

La magnitud de los accidentes de tránsito debido a estos y a otros factores es una triste realidad, haciéndose más difícil, lento y costoso cada día lograr un alivio en términos de resarcimiento económico por la pérdida de vidas, lesiones personales, el dolor y sufrimiento humano de la víctima y sus familiares mediante la utilización del tradicional mecanismo de la vía judicial. Durante el año 1968–69 murieron 571 personas y se lesionaron 23,110 en accidentes de tránsito. Se puede afirmar que un número sustancial de los vehículos envueltos no estaban cubiertos por seguro. De acuerdo con los datos suministrados por la Oficina del Comisionado de Seguros, para el año 1969 sólo 97,000 vehículos comerciales y privados estaban asegurados. Para ese año había 538,000 vehículos de motor registrados en la Isla. Con frecuencia, las personas causantes de accidentes carecen de los medios económicos para responder, por lo que para un gran número de las víctimas su derecho a ser indemnizados resulta ilusorio. Aun cuando hay solvencia, el proceso judicial contra el causante para obtener alguna compensación resulta largo y costoso en la mayoría de los casos.

La Ley Núm. 138 de 26 de junio de 1968, ([1]) es un esfuerzo de nuestra Asamblea Legislativa para buscarle alivio a esa triste realidad. En el Informe de la Comisión Conjunta de la Cámara de Representantes que propuso el P. de la C. 874 que luego se convirtió en la Ley Núm. 138 se dice:

"Como resultado del aumento en la incidencia de los accidentes, el número de víctimas de accidentes de tránsito ha ido aumentando anualmente en Puerto Rico a un ritmo que constituye un motivo de grave preocupación para nuestra sociedad. Aun cuando estas víctimas tienen el recurso legal de demandar al causante del daño, éste con frecuencia no cuenta con medios económicos para responder. Esto es muy común en Puerto Rico donde la mayor parte de los conductores son insolventes o no están asegurados.

Por otra parte, el procedimiento legal que hay que seguir para la obtención de resarcimiento es uno largo y costoso en el cual la víctima tarda a veces años en conseguir, si prueba la negligencia del demandado, una sentencia a su favor. Después de conseguida esta sentencia, queda aún por delante la ardua y muchas veces estéril tarea de cobrar la misma a una persona insolvente y no asegurada.

Este cuadro, que ya tiene categoría de problema social, es el trasfondo sobre el cual se ha esbozado la medida objeto de nuestra consideración." 22 *Diario de Sesiones* 1042 (1968).

El presente recurso envuelve uno de los aspectos más debatidos de la Ley de Protección Social por Accidentes de Automóviles: la disposición contenida en su Sec. 8 (9 L.P.R.A. sec. 2058) que le concede a los demandados en acciones judiciales de daños y perjuicios resultantes de accidentes de automóviles una deducción de $1,000.00 por concepto de sufrimientos físicos y mentales de la víctima.

No existe controversia en cuanto a los hechos. Se trata de una acción iniciada por el recurrente contra el recurrido y su

([1]) 9 L.P.R.A. secs. 2051–2065. En vista del interés que pudiera tener en la interpretación de esta Ley, el Tribunal invitó a la Administración de Compensaciones por Accidentes de Automóviles para que compareciera en este recurso como *amicus curiae*. Oportunamente dicha agencia radicó su informe.

compañía aseguradora por daños físicos y sufrimientos mentales que alegó haber sufrido al ser golpeado el 3 de abril de 1970 por un automóvil que manejaba el recurrido. Los demandados admitieron la alegación de negligencia contenida en la demanda. Según estipulación de las partes, el demandante sufrió "hematomas, contusiones y abrasiones en el cuerpo y sufrimientos físicos y mentales." Estos daños fueron valorados, por estipulación de las partes, en la suma de $1,500.00. Se estipuló además la vigencia de una póliza de seguro expedida por la otra demandada que cubría el riesgo de accidentes como el alegado, sujeta dicha póliza a la condición según la cual la cubierta no alcanza a los accidentes automovilísticos ocurridos en Puerto Rico, a menos que los daños excedan de $1,000.00 por concepto de sufrimientos físicos y mentales y $2,000.00 por otros daños, si la persona causante del daño está exenta de responsabilidad legal por la Ley de Protección Social por Accidentes de Automóviles de Puerto Rico.[2]

El tribunal de instancia, apoyado en la estipulación de hechos y lo dispuesto en la Sec. 8(3)(b) de la Ley Núm. 138, resolvió que los demandados tenían derecho a la deducción de $1,000.00 por concepto de sufrimientos físicos y mentales concedida en dicha ley, y dictó sentencia condenando a los demandados a pagarle al demandante el exceso de $500.00.

Sostiene el recurrente que, contrario a lo resuelto por el Tribunal Superior, la Ley Núm. 138 no le concede al causante del accidente tal exención, pero que, aun cuando ésta existiese, la misma le sería de beneficio únicamente a la persona causante del accidente y no a la compañía aseguradora, la cual

---

[2] Esta cláusula aparece del endoso conocido como "Puerto Rico Amendatory Endorsement", el cual fue unido al expediente mediante moción suscrita por todas las partes incluyendo el *amicus curiae*. El texto inglés en su parte pertinente lee así:

". . . but this limitation shall apply only to the extent that the person or organization responsible for such injury is exempt from legal liability with respect thereto by reason of the Puerto Rico 'Automobile Accident Social Protection Act'. "

no puede beneficiarse de las defensas personales de su asegurado. Sostiene que en todo caso la ley resultaría inconstitucional, de entenderse que concede tal exención al causante del accidente, por privarle a la víctima de su propiedad sin debido procedimiento de ley.

## I

¿Concede la Ley Núm. 138 la deducción de $1,000.00 que reclaman los demandados? De las leyes recientes en distintos estados que como la Ley Núm. 138 han tratado de reformar el régimen de compensación por accidentes automovilísticos, hay varias que contienen limitaciones al derecho a indemnización por sufrimientos físicos y mentales: General Laws of Massachusetts, chapter 231, section 6D; Florida: West's Fla. Session Law Service, chapter 71-252, sec. 8; Illinois Insurance Code, Art. XXXV, sec. 608. También se encuentra este tipo de limitación en muchos planes de los que han surgido en años recientes como modelos para ese tipo de reforma: Plan Keeton-O'Connell, Proyecto Hart-Magnuson en el Congreso, Plan de la American Insurance Association, Plan de la National Association of Independent Insurers, Plan de la American Mutual Insurance Alliance, Plan del New York State Insurance Department, Plan Cotter, Plan Woodroof-Squillante, Plan de la Connecticut Association of Independent Insurance Agents, Plan Gordon. ([3]) La mayoría de estas propuestas limitan el derecho a recuperar en *tort* los sufrimientos en un grado mayor que la Ley Núm. 138. ([4])

La Sec. 8 de la Ley Núm. 138, 9 L.P.R.A. 2058, dispone lo siguiente:

---

([3]) Rokes, *No-Fault Insurance*, 1971, Insurors Press, Inc., Santa Mónica, California, Capítulos VI, VII, VIII.

([4]) Un sistema propuesto frecuentemente y adoptado en Massachusetts consiste en conceder daños por sufrimientos que no excedan de los gastos médicos o, si éstos fuesen menos de $500.00, que no excedan de la mitad de los gastos médicos.

"(1) Los beneficios que provee este Capítulo por concepto de lesiones sufridas en accidentes de automóviles ocurridos en el Estado Libre Asociado de Puerto Rico se pagarán, hasta los límites indicados en esta sección, en sustitución de las sumas que de otro modo tendría derecho a reclamar la víctima al amparo del principio de responsabilidad a base de negligencia, relevándose a la parte responsable del pago de toda reclamación hasta dichos límites o hasta el importe de los beneficios cobrados por la víctima y sus beneficiarios, de los dos el que resulte mayor.

(2) Se eximirá de la aplicación del principio de responsabilidad a base de negligencia a toda persona que sea responsable, en virtud de un acto negligente de su parte, por daños o lesiones por los cuales se proveen beneficios bajo este Capítulo. Dicha exención no aplicará en aquellos casos en que la pérdida recobrable por la víctima en virtud de las lesiones sufridas exceda de:

(a) la cantidad de $1,000 por sufrimientos físicos y mentales incluyendo dolor, humillación y daños similares, y de

(b) la suma de $2,000 por concepto de otros daños o pérdidas no incluidas en (a).

(3) Toda persona a quien un tribunal declare en una acción civil relacionada con la posesión, mantenimiento, u operación de un vehículo de motor culpable de haber causado por negligencia lesiones por las cuales la víctima tenga derecho a recibir beneficios o servicios médico-quirúrgicos y de hospitalización bajo este Capítulo, tendrá derecho a una reducción en la sentencia impuesta por el tribunal hasta la cantidad indicada en esta sección.

(a) En cada caso en que aplique esta sección el Tribunal deberá indicar separadamente el importe de la indemnización otorgada por daños debido a dolor y sufrimientos físicos y mentales y el importe de la indemnización otorgada por otras pérdidas.

(b) La reducción aplicable a daños por sufrimientos físicos y mentales será de $1,000.

(c) La reducción aplicable a daños y pérdidas por causas que no sean sufrimientos físicos y mentales será la suma de $2,000 o el importe de los beneficios totales pagados por la Administración, si dicho importe fuera mayor de $2,000.

(d) La indemnización que un tribunal otorgue a los sobrevivientes de la víctima por concepto de los daños morales sufridos por éstos por razón de la muerte de dicha víctima, se reducirá por

una suma igual al importe de los beneficios que la víctima y sus beneficiarios hayan recibido de la Administración.

(e) Si la responsabilidad por los daños causados recae sobre dos o más personas, las reducciones que provee esta sección se deducirán sólo una vez. Las mismas se restarán de la sentencia total a pagarse por todos [*sic*] las partes. El tribunal determinará el importe de la reducción que aplicará a cada una de dichas partes.

(f) Las disposiciones de esta sección serán aplicables a las sentencias dictadas en reclamaciones promovidas en relación con accidentes ocurridos a partir del 1 de julio de 1969."

La parte recurrente argumenta que la redacción del precepto transcrito necesariamente implica que la aplicación de los límites señalados en la Sec. 8 está condicionada a que la Ley provea beneficios a favor de la víctima o sus beneficiarios. En otras palabras que el causante del accidente sólo podrá acogerse a las deducciones cuando la propia ley conceda beneficios por la partida que se desea deducir. Esto se desprende, alega el recurrente, de aquella parte de la Sec. 8 que dice:

"Los beneficios que provee este Capítulo . . . se pagarán, hasta los límites indicados en esta sección, *en sustitución de las sumas que de otro modo tendría derecho a reclamar la víctima al amparo del principio de responsabilidad a base de negligencia . . ."* (Énfasis suplido.)

No estamos de acuerdo. La Sec. 4 de la Ley (9 L.P.R.A. sec. 2054) enumera los *beneficios* que se proveen a las víctimas de accidentes de tránsito. Incluye servicios médico-hospitalarios y pagos por incapacidad, por muerte y por desmembramiento. La Ley *no* contempla compensación por sufrimientos físicos y mentales. Por otro lado, la Sec. 8 establece un relevo de responsabilidad por negligencia a favor del causante del accidente por los conceptos y límites que allí se indican a manera de *deducciones*: (1) sufrimientos físicos y mentales, $1,000.00 y (2) otros daños y pérdidas, $2,000.00, ó el importe de los beneficios totales pagados por la Administración si dicho importe fuera mayor de $2,000.00.

La deducción de $1,000.00 por sufrimientos mentales no está condicionada meramente al caso de aquellas víctimas de accidentes que hayan *recibido* los beneficios que provee la ley, sino que se extiende a aquellas que aunque no se hayan acogido ni recibido los beneficios del sistema "[t]enga *derecho* a recibir beneficios o servicios médico-quirúrgicos y de hospitalización. . . ." bajo el mismo. En el caso que consideramos, la víctima, aquí recurrente, sufrió "hematomas, contusiones y abrasiones en el cuerpo" como consecuencia de un accidente de automóviles. Como tal, pudo haber reclamado de la Administración de Compensaciones por Accidentes de Automóviles los servicios médicos, de hospitalización y otros beneficios que ofrece la Ley. 9 L.P.R.A. sec. 2054(5).

■ Resolvemos que la exención de $1,000.00 por concepto de sufrimientos mentales de la víctima de un accidente de automóviles es una automática que beneficia al causante del accidente.([5]) Fue correcta la determinación del tribunal sentenciador en ese sentido. En verdad el trasfondo histórico y legislativo de esta legislación lo confirma. En el Informe de la Comisión Conjunta de la Cámara de Representantes que propuso el P. de la C. 874 que luego se convirtió en la Ley Núm. 138 se dice:

"B. El P. de la C. 874 contempla el pago de los beneficios que en el mismo se proveen, y hasta sus límites, como sumas pagadas en sustitución de las que de otro modo la víctima tendría derecho a reclamar bajo el principio de responsabilidad por culpa o negligencia.

Por tal razón, un aspecto sobresaliente del plan es la disposición por medio de la cual se exime de responsabilidad al causante del daño, haya o no incurrido el mismo en negligencia por la cantidad de $1,000 por concepto de sufrimientos mentales, morales y humillación y hasta la cantidad de $2,000 por concepto de otros daños. Para que este aspecto del programa cobre vigencia,

---

([5]) En *Rivera* v. *Batistini,* 100 D.P.R. 499 (1972), resolvimos que la exención de 1,000.00 se aplica por *cada* víctima del accidente, es decir en forma individual y no global.

el Comisionado de Seguros deberá tomar las providencias que sean necesarias para que los aseguradores privados ofrezcan al público seguros con cubiertas en exceso de estos límites.

Esta disposición, sin embargo, no excluye en forma alguna el derecho de la víctima o de sus beneficiarios a reclamar por la vía judicial y a base del principio de responsabilidad por culpa o negligencia. Sólo reduce, por las cantidades antes señaladas, o el importe de los beneficios pagados por la Administración por otros daños que no sean sufrimientos, si resultaren en una cantidad mayor, las sentencias que en su día imponga un tribunal por concepto de indemnización. El exceso corresponderá, como hasta el presente ha correspondido, a la víctima y sus beneficiarios reclamantes.

Esta limitación en el derecho a demandas por daños está ampliamente compensada por los beneficios que ofrece la medida. Estos beneficios, por no depender de una determinación previa de responsabilidad, ni de la solvencia del responsable, podrán llegar a la víctima y a los que de él dependen, a tiempo para evitar que el accidente produzca un serio problema económico en la familia." *Diario de Sesiones*, lugar citado, supra.

## II

¿Se extiende la deducción reclamada a la compañía aseguradora del causante del accidente? El recurrente arguye que la deducción se establece a favor del causante inmediato del accidente, del que haya incurrido en negligencia y que sea una persona natural. Descansa en la Sec. 8 de la Ley, 9 L.P.R.A. sec. 2058, especialmente en aquella parte del inciso (2) que dice: "Se eximirá de la aplicación del principio de responsabilidad a base de negligencia a *toda persona que sea responsable, en virtud de un acto negligente de su parte,* por daños o lesiones por las cuales se provean beneficios bajo este Capítulo . . . ." y aquella parte del inciso (3) que dice: "*Toda persona a quien* un tribunal *declare* en una acción civil relacionada con la posesión, mantenimiento, u operación de un vehículo de motor *culpable de haber causado por negligencia* lesiones . . .

tendrá derecho a una reducción en la sentencia . . ." (Énfasis suplido.)

Sostiene que la deducción no podría beneficiar a la compañía aseguradora, ya que en jurisdicciones como la nuestra que permiten una acción directa contra la aseguradora distinta y separada de la acción contra el asegurado, la compañía está impedida de interponer defensas personales o privativas del asegurado. Cita los casos de *Insurance Co. of P.R.* v. *Ruiz*, 96 D.P.R. 175 (1968); *Ortiz* v. *Gobierno Municipal de Ponce*, 94 D.P.R. 472 (1967); *Cuchi Coll* v. *Gobierno de la Capital*, 93 D.P.R. 734 (1966); *García* v. *Northern Assurance Co.*, 92 D.P.R. 245 (1965).

El apuntamiento es inmeritorio. La deducción de $1,000.00 por sufrimientos mentales de la víctima es aplicable no sólo a la persona natural que opera el vehículo de motor y ocasiona el accidente y daños a la víctima, sino también a la parte *natural* o *jurídica* que a base de alguna relación con aquella se le pueda atribuir la responsabilidad del pago de los daños sufridos por la víctima. Eso se desprende de la letra del inciso (1) de la Sec. 8 de la Ley que al conferir la deducción o relevo se refiere "a la parte responsable del pago", (6) sin que deba inferirse que la deducción no abarca a la compañía aseguradora.

Ello, unido al historial legislativo de la medida, indica que la intención fue que la deducción se extendiese a la aseguradora. Refiriéndose a esta sección, señala el Informe de la Comisión Conjunta que propuso el P. de la C. 874:

---

(6) Dicho inciso lee así:

"(1) Los beneficios que provee este Capítulo por concepto de lesiones sufridas en accidentes de automóviles ocurridos en el Estado Libre Asociado de Puerto Rico se pagarán, hasta los límites indicados en esta sección, en sustitución de las sumas que de otro modo tendría derecho a reclamar la víctima al amparo del principio de responsabilidad a base de negligencia, *relevándose a la parte responsable* del pago de toda reclamación hasta dichos límites o hasta el importe de los beneficios cobrados por la víctima y sus beneficiarios, de los dos el que resulte mayor." (Énfasis nuestro.)

"Para que este aspecto del programa cobre vigencia, el Comisionado de Seguros deberá tomar las providencias que sean necesarias para que los aseguradores privados ofrezcan al público seguros con cubiertas en exceso de estos límites."

En virtud de esta recomendación, el Comisionado de Seguros aprobó, efectivo el 1ro. de enero de 1970, un endoso que fue incorporado en todas las pólizas de automóviles, incluyendo la póliza envuelta en el presente pleito, ([7]) que en lo pertinente lee así:

"Endoso Enmendatorio—Puerto Rico

Se acuerda que:

1. El seguro provisto bajo cualquier cubierta de lesiones corporales de esta póliza no aplica a ningún accidente que ocurra en el Estado Libre Asociado de Puerto Rico y que surja como consecuencia de la propiedad, mantenimiento o uso, incluyendo la carga y descarga, de cualquier vehículo de motor, a menos que la cantidad recobrable por concepto de daños corporales sufridos por las persona por daño corporal, enfermedad o muerte como resultado del mismo exceda (a) $1,000 por sufrimientos físicos y mentales (incluyendo dolor, humillación y daños similares) y (b) $2,000 por concepto de otros daños o pérdidas no incluidas en (a), pero esta limitación será aplicable solamente en tanto en cuanto la persona u organización responsable por tales daños, esté exenta de responsabilidad legal con respecto a ello por virtud de la 'Ley de Protección Social por Accidentes de Automóviles' de Puerto Rico."

Resulta, pues, claro que el contrato de seguro contiene la deducción en controversia. La deducción forma parte de las condiciones y cubierta del seguro. Si no fuera así, la aseguradora estaría cubriendo y cobrando primas por un riesgo o daño al que su asegurado no está expuesto, lo que violaría la Sec. 11.020 del Código de Seguros, 26 L.P.R.A. sec. 1102 (Objetos asegurables), que dispone, en parte:

---

([7]) Véase el Apéndice II al alegato del *amicus curiae* y la "Moción Informativa" radicada por las partes ante este Tribunal el 24 de agosto de 1971.

"Sujeto a las disposiciones de este título, un contrato de seguro podrá hacerse con respecto a cualquier objeto y los riesgos en el mismo expresados, en cuanto a los cuales existe la posibilidad de damnificación e interés asegurable, . . . ."

Los casos relativos a las defensas que no puede levantar el asegurador y que cita la parte recurrente en su memorando no son aplicables. Estos casos constituyen autoridad para la norma de que el asegurador está severamente restringido en esta jurisdicción, en virtud de las disposiciones del Código de Seguros, 26 L.P.R.A. 2001–2004, autorizando acciones directas contra el asegurador, de interponer defensas técnicas o personales del asegurado. Pero estos mismos casos aclaran que en forma alguna quiere esto decir que el asegurador asume una responsabilidad absoluta. *García* v. *Northern Assurance Co.* (supra, a la pág. 255). Su responsabilidad, dice la ley de seguros (26 L.P.R.A. 2003), ". . . no excederá de aquella dispuesta en la póliza."

### III

El último apuntamiento del recurrente es un superficial ataque a la Sec. 8 de la Ley. Alega que de interpretarse que tanto la persona responsable del accidente como su compañía aseguradora gozan de una exención de $1,000.00 por concepto de los sufrimientos mentales de la víctima la Sec. 8 sería inconstitucional ya que se le estaría privando, por fíat legislativo, a las miles de personas que todos los años sufren en Puerto Rico las consecuencias de un accidente automovilístico de su derecho a recobrar del causante o de la compañía aseguradora de éste el valor total de los daños que se le ocasionaron. De ello inferimos que el recurrente se ampara en la disposición de nuestra Constitución referente a la privación de propiedad sin debido procedimiento de ley.

Su posición es sumamente frágil. Basta leer la breve exposición del propósito de la Asamblea Legislativa para darse cuenta del legítimo interés público que tuvo en mente al adop-

tar esta medida. En el Informe de la Comisión Conjunta que propuso el proyecto que luego se convirtió en la Ley Núm. 138 se dice:

*"Alcance de la Medida*

1—*Introducción*

El P. de la C. 874 tiene el propósito de establecer un sistema de seguro y compensación por accidentes de tránsito y crear una instrumentalidad pública para administrar el sistema, que se conocerá como 'Administración de Compensaciones por Accidentes de Automóviles'.

La medida fue propuesta tomando como base un estudio realizado por el Dr. Juan B. Aponte para la Asamblea Legislativa, por encomienda del Negociado de Presupuesto y a virtud de lo dispuesto en la Resolución Conjunta núm. 105 de 27 de junio de 1964.

El objetivo que animó a la Asamblea Legislativa en la aprobación de la R.C. núm. 105 fue el de buscar una solución al cada día más creciente problema de las víctimas de accidentes de tránsito que, dentro del sistema actual de compensación fundado en el concepto de negligencia, no reciben compensación alguna por las lesiones sufridas.

En adición a los sufrimientos que producen las lesiones corporales, que en muchos casos resultan en la pérdida de las funciones de extremidades y órganos vitales y a veces en la pérdida de la vida, los accidentes de tránsito tienen un gran impacto económico y moral adverso sobre la víctima y los miembros de la familia. En términos generales mientras mayor sea el número de dependientes y menor la edad de éstos, más grave será el impacto económico en caso de la muerte o incapacidad del jefe de la familia. En el caso de dependientes adultos, el impacto económico será más grave en la medida en que el grado de dependencia de éstos sea mayor. El impacto moral no puede medirse. En uno u otro caso, el desvalimiento de la familia puede llegar a ser total.

Como resultado del aumento en la incidencia de los accidentes, el número de víctimas de accidentes de tránsito ha ido aumentando anualmente en Puerto Rico a un ritmo que constituye un motivo de grave preocupación para nuestra sociedad. Aun cuando estas víctimas tienen el recurso legal de demandar al causante del

daño, éste con frecuencia no cuenta con medios económicos para responder. Esto es muy común en Puerto Rico donde la mayor parte de los conductores son insolventes o no están asegurados.

Por otra parte, el procedimiento legal que hay que seguir para la obtención de resarcimiento es uno largo y costoso en el cual la víctima tarda a veces años en conseguir, si prueba la negligencia del demandado, una sentencia a su favor. Después de conseguida esta sentencia, queda aún por delante la ardua y muchas veces estéril tarea de cobrar la misma a una persona insolvente y no asegurada.

Este cuadro, que ya tiene categoría de problema social, es el trasfondo sobre el cual se ha esbozado la medida objeto de nuestra consideración." (*Diario de Sesiones,* Vol. 42, pág. 1041).

La doctrina moderna con referencia a la privación de la propiedad sin debido procedimiento de ley es que las cortes no entrarán en consideraciones sobre la sabiduría de las medidas legislativas, sino que sostendrán su constitucionalidad a menos que no tengan un propósito público legítimo, o sean claramente arbitrarias, o que no guarden una relación razonable con el propósito público que persiguen. *E.L.A.* v. *Márquez,* 93 D.P.R. 393 (1966); *E.L.A.* v. *Rosso,* 95 D.P.R. 501 (1967), apelación denegada, 393 U.S. 14 (1968); reconsideración denegada, 393 U.S. 971 (1968).

La Sec. 8 es sólo una pieza dentro del plan global concebido por la Asamblea Legislativa en la Ley Núm. 138 en un esfuerzo de procurar que un gran número de las víctimas de accidentes de automóviles se les garantizara ciertos servicios médicos y, en algunos casos, compensación por lesiones que de otro modo, ya por la incapacidad económica del causante o por no satisfacer las condiciones previas exigidas a una determinación de responsabilidad por la vía judicial tramitada en la forma tradicional, no lograría recibir.

La deducibilidad de las sumas por los conceptos establecidos en la Sec. 8 es una limitación del derecho de obtener resarcimiento total previo ejercicio y la experiencia de un proceso judicial que en no pocas ocasiones resulta largo y angustioso.

Constituye una limitación a ese derecho en los casos, que son ciertamente los menos, en que no existe la insolvencia del causante. Pero el legislador tuvo esto en mente al aprobar esta legislación. En el referido Informe, se indica:

"Esta limitación en el derecho a demandar por daños está ampliamente compensado por los beneficios que ofrece la medida. Estos beneficios, por no depender de una determinación previa de responsabilidad, ni de la solvencia del responsable, podrán llegar a la víctima y a los que de él dependen, a tiempo para evitar que el accidente produzca un serio problema económico en la familia." (*Diario de Sesiones*, Vol. 22, pág. 1042.)

Otras fuentes que se han expresado a favor de deducciones como ésta, y que probablemente influyeron en la adopción de tales deducciones en los planes de reforma de varios estados, añaden que la compensación de sufrimientos en la práctica se ha prestado para muchos abusos. y que han servido en gran medida para cubrir secretamente los honorarios de abogado del demandante. Rokes, *No-fault Insurance*, pág. 183. En un artículo reciente titulado "Insurance: the Road to Reform", publicado en la revista *Consumer Reports*, se establecen varias metas que, en interés de los consumidores, debe cumplir un programa de reforma del seguro de automóviles. Una de las metas es la siguiente:

"7. Debe limitarse sustancialmente el número de reclamaciones por dolor y sufrimientos, subsistiendo sólo las más graves. La mayoría de tales reclamaciones actualmente se pagan a las víctimas de lesiones leves en vez de a los gravemente heridos. La persona promedio que incurre en gastos médicos menores de $100 y que utiliza un abogado para promover su reclamación recibe una cantidad seis veces mayor que su pérdida. Al eliminarse las reclamaciones pequeñas por dolor y sufrimiento, el sistema de seguros podría quizás pagar, además de las pérdidas monetarias, por lo menos alguna compensación a las víctimas gravemente desfiguradas o permanentemente incapacitadas." 36 *Consumer Reports*, 226 (abril 1971).

■ Al pasar juicio sobre la validez de la Sec. 8 no podemos ignorar lo anteriormente expuesto. Concurrimos con el juicio legislativo. La medida está plenamente apoyada en base a legítimas necesidades y problemas sociales existentes en el país. Su facultad para enfrentarse a ellos y buscarle alivio o solución no puede, seriamente, ponerse en duda. La medida legislativa que consideramos guarda una relación razonable con el fin público que persigue. (8)

---

(8)*Pinnick* v. *Cleary*, 271 N.E.2d 592 (Mass. 1971), sostuvo la constitucionalidad de una ley de Massachusetts diseñada, al igual que la Ley Núm. 138, para reformar el sistema de compensación por accidentes de automóviles, estableciendo un seguro compulsorio, una compensación básica sin necesidad de probar negligencia y ciertos límites a la posibilidad de demandar al causante del accidente en *tort*. En cuanto a la limitación que impone dicho estatuto a demandar por los sufrimientos físicos y mentales, la Corte Suprema de Massachusetts señala lo siguiente: (1) que la ley en cuestión no ha privado al demandante de ningún derecho adquirido, pues la causa de acción surgió al momento del accidente, cuando ya era efectiva la ley; (2) la ley no es contraria al Debido Proceso porque tiene objetivos legítimos, que son: la reducción de la congestión de los tribunales (que es un problema agudo en Massachusetts), reducir el alto costo de los seguros de automóviles y aumentar la eficiencia en la administración de esos seguros; (3) la ley provee un sustituto razonable para los derechos que antes existían, ya que provee remedios moderados en todos los casos cuando el sistema anterior proveía remedios más ventajosos, pero sólo en algunos casos. En *New York Central R.R.* v. *White*, 243 U.S. 188 (1916), la Corte Suprema de los Estados Unidos, al sostener la constitucionalidad de la Ley de Compensaciones por Accidentes del Trabajo del estado de Nueva York, permitió una sustitución más desventajosa.

En Puerto Rico la Ley de Compensaciones por Accidentes del Trabajo dispone que los beneficios provistos por el Fondo del Seguro del Estado serán el remedio exclusivo del trabajador cuando sufre un accidente del trabajo y no puede demandar a su patrono si éste está asegurado. 11 L.P.R.A. sec. 21. Los beneficios enumerados por dicha Ley no incluyen compensación por sufrimientos físicos y mentales. La constitucionalidad de esta Ley ha sido sostenida por este Tribunal en *Montaner* v. *Comisión Industrial*, 54 D.P.R. 55 (1939); *Sucn. Rodríguez* v. *Comisión Industrial*, 53 D.P.R. 825 (1938). Véase *Cardona* v. *Comisión Industrial*, 79 D.P.R. 672, 677 (1956).

*Grace* v. *Howlett*, resuelto por la Illinois Circuit Court for Cook County el 29 de diciembre de 1971, 40 U.S.L.W. 2437, declara inconstitucional una ley de Illinois que limita la cantidad a recobrarse en *tort* por sufrimientos físicos y mentales a raíz de un accidente automovilístico. La ley no creaba seguro compulsorio. La Corte señaló que en este último aspecto es que se halla el defecto crucial de la ley, pues discrimina irrazonablemente contra

*La sentencia recurrida será confirmada.*

El Juez Presidente, Señor Negrón Fernández, así como el Juez Asociado, Señor Hernández Matos, no intervinieron.

---

las víctimas que tienen la desgracia de sufrir un accidente con un automovilista no asegurado. Además, la ley hace depender la cantidad máxima recobrable por sufrimientos en el monto de los gastos médicos. Como los gastos médicos varían de acuerdo a la capacidad económica de la víctima y al lugar o personas que hagan el tratamiento, se crea discrimen que no tiene base ni motivo legítimo alguno. Estas objeciones no son aplicables a la Ley Núm. 138 de Puerto Rico.

Para un análisis de los dos casos, el de Massachusetts y el de Illinois, puede verse la Anotación en 42 A.L.R.3d (1972) sobre el tema *"Validity and Construction of 'No-Fault' Automobile Insurance Plans"*.